David KING, Plaintiff,

v.

MTA BRIDGES AND TUNNELS, Michael C. Ascher, Harris M. Schechtman, Raymond V. Hickman, James Fortunato, Walter Fox, Credit Bureau of Port Chester, Inc., Genesis Investigations, Inc., First American Investigations, Inc., TR Security, Inc., et al., Defendants.

Civil Action No. CV–94–3578.

United States District Court, E.D. New York.

July 23, 1996.

David King, Pro Se.

Stern & Stern, P.C., New York City, Kelly Rode & Kelly, Mineola, NY, Stephanie L. Zaro, Kew Gardens, NY, Jacobowitz, Spessard, Garfinkel & Lesman, Doar Devorkin & Rieck, New York City, for Defendants.

### MEMORANDUM AND ORDER

TRAGER, District Judge:

Plaintiff, pro se, is employed as a Bridges and Tunnels Officer by Triborough Bridge and Tunnel Administration (TBTA), now known as MTA Bridges and Tunnels. He stopped working under sharply contested circumstances in October 1993. Plaintiff's amended complaint, filed on August 18, 1995, against TBTA, five individual TBTA officials, including its president and two vice presidents (collectively, the TBTA defendants), and against a credit bureau and three private investigation companies (collectively, the credit report defendants), alleges violations of 42 U.S.C. §§ 1983 and 1985 and 15 U.S.C. § 1681p (Federal Fair Credit Reporting Act).

The credit report defendants became involved in plaintiff's strained relationship with TBTA because of their roles in obtaining his consumer credit report from a national credit reporting company at the behest of TBTA, purportedly in connection with consideration of Mr. King for a promotion. Defendant TR Security was under contract with TBTA to provide armed guards and "security services" at the time of the credit report request. There is no indication in the record that defendants FA Investigations, Inc., Genesis Investigations, Inc. or Credit Bureau of Port Chester had any contractual or other relationship with TBTA. William Gans of FA Investigations was contacted by Anthony Cimato of TR Security to obtain credit reports on four individuals, as requested by TBTA. Gans then contacted Genesis Investigations, Inc., which, in turn, contacted Credit Bureau of Port Chester. Defendant Credit Bureau contacted non-defendant Trans Union, a major national credit reporting company, and obtained plaintiff's credit report.

Plaintiff alleges that this credit inquiry violated the Federal Fair Credit Reporting Act. Compl. ¶ 26. Plaintiff also alleges that he has been harassed by persons he believes to may be employees of the credit report defendants. Compl. ¶ 27, 30.

The credit report defendants have cross-claimed against TBTA and have moved for summary judgment, on grounds that their actions were not in violation of FCRA and that, with respect to the harassment claim against the credit report defendants, plaintiff has produced no material facts that tend to substantiate it. Plaintiff has replied to these motions. The TBTA defendants have not moved for summary judgment on any of the claims against them.

### Background

#### Harassment Claim

In his complaint Mr. King has asserted that his phone was tapped and that he has been subjected to harassing surveillance and interference. Am.Compl. ¶ 30 and 35. He has not, however, provided objective evidence of a tap nor any particulars of information possibly obtained from a tap that might lend support to his otherwise conclusory allegations. Deposition transcript pages 86–146, 215–16, Ex. A, TR Security Reply dated No-

vember 28, 1995. Mr. King, in response to questions about the alleged tapping of his home phone, for instance, asserted that the TBTA President Ascher testified in a deposition in a suit brought by the union that a Verrazano Bridge tollbooth had been bugged. Tr. at 113–14, 120–22. He described his mail order purchase of a telephone tap detector in the period 1990–91 that confirmed his perception that his phone was tapped. He communicated with the FCC concerning his perception that his phone was tapped, but has not submitted any of this correspondence to the court. Tr. at 123–24.

Plaintiff's allegations of harassment off the job stem from incidents in which he was approached by strangers in bars, one of whom offered to sell him a gun. Tr. at 142–46. He has likewise failed to produce any evidence of any involvement by the credit report defendants in these alleged incidents.

### Credit Report Claim

Mr. King has presented more substantial evidence regarding the credit report request than with respect to the harassment claim. The undisputed facts of the credit request are, on or about March 13, 1992, TBTA initiated a request to TR Security for plaintiff's credit report. Anthony Cimato, a principal of TR Security, states that an unnamed employee of the Internal Security Division of TBTA called him on March 12, 1992 to request credit reports for four individuals, who "were up for promotional consideration." Cimato Aff. dated October 18, 1995 ¶ 3. (Defendant, TR Security, in response to an interrogatory from plaintiff, stated: "Defendant TR SECURITY, INC. cannot recall the name of the exact TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY employee who made the request to obtain plaintiff's credit report for promotional consideration.") TR Security relayed the request to First American Investigations (FA Investigations), who relayed the request to Genesis Investigations (Genesis) who requested the report from Credit Bureau. (No explanation has been offered as to why neither TR Security, FA Investigations nor Genesis made a direct request for the credit report from Credit Bureau of Port Chester (Credit Bureau) or from Trans Union itself.) Credit Bureau obtained a one-page credit report from Trans Union, not named as a defendant. The report is attached as Ex. C to Credit Bureau Brf. dated August 15, 1995.

Plaintiff disputes the assertion that the credit report failed to make its way back through this network to TBTA but raises nothing but conclusory allegations that TBTA actually received the report. Credit Bureau admits it obtained the credit report and gave it to Genesis. Credit Bureau Brf. at 2. Genesis also admits its role in requesting and transferring the report. "Genesis Investigations has provided valid service to a governmental client who properly requested consumer credit information and Genesis Investigations did so in a confidential and accurate manner." Genesis Brf. dated August 9, 1995 at 6th unnumbered page.

FA Investigations admits receiving the report from Genesis and forwarding it to TR Security. FA Investigations Brf. dated October 2, 1995 at 1. Plaintiff attached FA Investigators' letter to him, explaining that the TR Security request was "for a credit report on you, as requested by the Triboro Bridge and Tunnel Authority, your employer, for consideration in your promotion." Pltf. Ex. F, attached to Pltf. Reply Brf. dated October 17, 1995.

Anthony Cimato of TR Security states, however, that an unnamed employee of the Internal Security Division of TBTA called him on March 13, 1992 to cancel the request for the credit reports. Cimato Aff. dated October 18, 1995 ¶ 5. Cimato states that he contacted William Gans of FA Investigations but was told that the cancellation request was too late. *Id.* He further states that, although TR Security paid the bill for the credit reports without presenting it to TBTA, no one "at TR SECURITY ever received copies of the credit reports for the plaintiff." *Id.* ¶ 6.

Plaintiff learned that the request had been made when, with no knowledge that TBTA had made any request for his credit report, in July 1992, he obtained his credit report from Trans Union and found an entry recording Credit Bureau's request. (Plaintiff had previously dealt with Trans Union regarding his credit report—the report Credit

Bureau transmitted to Genesis included his Consumer Statement with regard to his outstanding student loan. Ex. C attached to Credit Bureau Reply dated November 27, 1995.)

After two days of denying to King that it had requested his credit report, Credit Bureau orally informed him that Genesis was the requesting agency. Pltf. Tr. at 127–32 attached as Ex. A, TR Security Reply Brf. dated November 28, 1995. Pltf. Brf. dated October 17, 1995 at 3. In a letter dated August 3, 1992, Credit Bureau provided Genesis' name and address in writing. Ex. D, Pltf. Brf. dated October 17, 1995. However, Credit Bureau relayed plaintiff's request to Genesis which replied directly to him on July 30, 1992, informing him that they had obtained the report for FA Investigations. Ex. E, Pltf. Brf. dated October 17, 1995.

Plaintiff contacted FA Investigations and received a copy of the report from them but did not contact TR Security. Instead he wrote a letter of complaint directly to President Ascher of TBTA. Pltf. Tr. at 133–34. Plaintiff also obtained a number of corrections from Trans Union but does not allege that he requested Trans Union to notify Credit Bureau or other prior recipients of this update to the report.

Defendants, TR Security, FA Investigations, Genesis Investigations and Credit Bureau of Port Chester, have moved for summary judgment on the grounds that their actions in requesting plaintiff's consumer credit report were not in violation of FRCA as all acted in a good faith belief that the report was requested by TBTA for a permissible purpose under FRCA, that there were no inaccuracies in the credit report obtained, in the alternative, that, no damages accrued to plaintiff from any inaccuracy in the report, and that plaintiff has failed to produce any evidence from which any inference could be drawn that any of these defendants was involved in the alleged harassment he experienced from his employer, TBTA.

### Discussion

The standard for deciding motions for summary judgment is specified in Fed. R.Civ.P. 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

"On a summary judgment motion, the court is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact," *Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995), but as the Supreme Court noted in *Celotex Corp. v. Catrett:* "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Although all justifiable inferences of the non-movant are to be credited, the non-movant must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor.... The movant has the burden of showing there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Not all disputed facts are a basis for denying summary judgment. "The non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996).

### Harassment Claim

Plaintiff did not address the harassment claim in his briefs. His deposition testimony on this subject was rambling and provided no substantive evidence of his claims. He has failed to meet his burden of production with respect to a summary judgment motion and thus summary judgment is granted to the credit report defendants on this arm of their motions.

### Credit Report Claim

Plaintiff's claims against the credit report defendants arise under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Con-

struing plaintiff's amended complaint liberally, as is appropriate for a pro se plaintiff, *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993), citing *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980), it alleges that the report was obtained on an impermissible basis, under false pretenses, and that credit report defendants violated their duty to assure that the information transmitted was accurate.

### (1)

■ With respect to the first claim, § 1681b, titled "Permissible purposes of consumer reports," provides, in pertinent part: "A Consumer reporting agency may furnish a consumer report under the following circumstances and no other: ... (3) To a person which it has reason to believe—... (B) intends to use the information *for employment purposes* ..." (Emphasis added.) "Employment purposes" in connection with a consumer report is defined in § 1681a(h) as "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." [1]

The critical issue with respect to plaintiff's claim against the credit report defendants that the report was obtained for an impermissible purpose is whether the credit report defendants' acts constituted a violation of FRCA, even if TBTA's action in requesting a credit report on its employee under a false statement was a FRCA violation. Here plaintiff has produced no material facts supporting any inference that these organizations acted other than in a good faith belief that the credit report was requested for "employment purposes" by an organization that

was indisputably the employer of the plaintiff.

For the purposes of this summary judgment motion, one must accept the inference that TBTA misrepresented its purpose to TR Security by stating that the report was to be used in connection with consideration of plaintiff for promotion. Accepting the additional inference that this misrepresentation in TBTA's request establishes that it was not for a permissible employment purpose, plaintiff has produced no material fact supporting the inference that any of the credit report defendants had any reason to believe that the permissible reason asserted by TBTA was false.[2] Plaintiff was a TBTA employee in March 1992, and, in fact, is still a TBTA employee.[3] Plaintiff's name was one of four given to TR Security for credit checks. Cimato Aff. Ex. B.

### (2)

■ Plaintiff also bases his claims against the credit report defendants on the assertion that "[i]t was obtained under false pretenses, which violates the FCRA." Pltf. Brf. dated October 17, 1995 at 1. The term, "under false pretenses," is found in § 1681q, which provides:

> Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than $5,000 or imprisoned not more than one year, or both.

There is no need to infer a civil cause of action from this criminal provision because § 1681n provides a civil liability for willful noncompliance. However, section 1681n re-

---

**1.** A "consumer report" in the FRCA is "information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, ... which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes or (2) employment purposes...." It is distinguished in the FRCA from an "investigative consumer report" that contains "information on a consumer's character, general,reputation, personal characteristics, or mode of living ... obtained through personal interviews with neighbors, friends, or associates...." It is clear that the one page report obtained by the credit report

defendants from Trans Union was a consumer report within the meaning of FRCA.

**2.** This misrepresentation does not necessarily mean that TBTA's request was not for employment purposes within the scope of FCRA, as it might have been connected to issues of "reassignment or retention as an employee."

**3.** Although it may have been negligent for the defendants, upon seeing the entry that plaintiff was a former employee of TBTA, to fail to check with TBTA whether the request was in fact permissible, that negligence cannot have been a proximate cause of any harm because plaintiff was in fact a TBTA employee.

quires willful failure to comply, and permits a consumer so injured to recover actual and punitive damages, costs and attorney's fees. Section 1681o governs civil liability for negligent noncompliance and provides actual, but not punitive, damages, costs and attorney's fees. Even accepting that TBTA's request, which in view of the checkered history of plaintiff's relations with his employer was certainly not for promotion purposes, was also thereby not for "employment purposes" within the meaning of FCRA, and that that alone constitutes a "false pretense," plaintiff has alleged nothing of even a conclusory nature to suggest that any of the credit report defendants had knowledge that TBTA's request was made under "false pretenses" so that any failure to comply with FRCA was willful. Nor has he produced any material facts that support an inference of negligence on these defendants' parts in failing to undertake inquiry into TBTA's motivation in requesting the report.

### (3)

■ A consumer reporting agency's obligation to the consumer with regard to the accuracy of its reports is governed by § 1681e(b): "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The four pronged standard for recovery of damages under 15 U.S.C. § 1681e(b) has recently been summarized by Judge Glasser:

> To succeed on a claim under this section, a plaintiff must establish that: (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

*Whelan v. Trans Union Credit Reporting Agency*, 862 F.Supp. 824, 829 (E.D.N.Y.1994). Further, "[b]ut even if the information [in a credit report] is inaccurate, a credit report-ing agency is not held strictly liable under the FCRA merely for reporting it; rather the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report." *Id.* In *Whelan*, the failure of the plaintiffs to notify the reporting agency that there was inaccurate information in its credit report was dispositive of the claim that the agency failed to follow reasonable procedures.

■ In support of his claim that the credit report defendants negligently failed to assure the accuracy of his credit report, plaintiff asserts that his "notice to Trans Union constituted constructive notice to [Credit Bureau]." Pltf. Brf. dated October 17, 1995 at 4. He then argues that, based on such constructive notice, Credit Bureau had an obligation "to assure the accuracy of plaintiff's credit report," and, in particular, should have "attempt[ed] to verify the information in the credit report before releasing it to Genesis." *Id.* at 5. Based on a review of plaintiff's reports before and after his request for modification by Trans Union, the modifications obtained by plaintiff were the deletion of an entry regarding an outstanding judgment based on a student loan and a "Consumer Statement" regarding that loan. Oddly, in view of the fact that plaintiff was apparently satisfied by Trans Union's corrections, the entry listing TBTA as his former employer remained uncorrected.

Plaintiff makes no claim that he *ever* notified Credit Bureau or any other credit report defendant that there were inaccuracies in the report it transmitted to Genesis. Even if, arguendo, one were to accept his assertion that his notice to Trans Union was constructive notice to Credit Bureau, that notice came after Credit Bureau transmitted the report to Genesis and did not include any request to send corrected reports to previous recipients.

Moreover, plaintiff, after having obtained interrogatories from all credit report defendants and alleges no specific consequences from any errors contained in his credit history. "The fact remains that plaintiff have (sic) never known the real purpose for the request and obtaining of his confidential credit report by the defendants, plaintiff is

only certain that the request was not for his promotional consideration as alleged by the defendants." Pltf. Brf. dated October 17, 1995 at 9. Plaintiff, at his deposition, in reply to the question: "What action, if any, do you believe was taken against you as a result of this credit report?" gave the answer: "I do not know how this credit report may have been used by those who came in contact with it." Tr. at 227, Ex. C attached to Credit Bureau Reply Brf. No TBTA response to plaintiff's interrogatory has been submitted. Thus, while the fact that TBTA requested a credit report may have caused plaintiff personal anguish, this anguish was not caused by errors in the contents of the report.

Thus, drawing all inferences in favor of the non-movant as is required in a motion for summary judgment, plaintiff has failed to produce "specific facts showing that there is a genuine issue of material fact for trial" as required by Fed.R.Civ.P. 56(c) with respect to his claims against the credit report defendants. Even though it may be an issue of fact whether TBTA or TR Security actually obtained a copy of plaintiff's credit report, it is not a material issue of fact. Plaintiff has produced no facts that support the inference that the credit report defendants had reason to believe that the permissible reason given by TBTA, his employer, was false; much less that their actions were willful or even negligent; nor has he established that he was injured by the transmittal of the credit report. Further, he has failed to establish that any inaccuracy in the report was the proximate cause of any injury to him. Finally, plaintiff has produced no evidence in support of his wholly conclusory allegations that any of the credit report defendants participated in TBTA's alleged harassment and phone tapping.

### Conclusion

For the foregoing reasons, summary judgment is granted to defendants TR Security, Inc., Credit Bureau of Port Chester, Inc., Genesis Investigations, Ltd., and First American Investigations, Inc. The cross-claims by these defendants are hereby dismissed as moot. Because the remaining claims against the other defendants, TBTA and its officials, present substantially different issues, as to which no summary judgment motion has been made, and which will likely require extensive proceedings before final resolution, in order to avoid delay, the Clerk of the Court is directed to enter judgment under Fed.R.Civ.P. 54(b) for defendants TR Security, Inc., Credit Bureau of Port Chester, Inc., Genesis Investigations, Ltd., and First American Investigations, Inc.