Bryan **DAVIS**, et al.

v.

**ASSET SERVICES**, et al.

No. Civ.A. 97–460–A.

United States District Court, M.D. Louisiana.

Dec. 1, 1998.

Ernest Mack Forbes, Jr., Denham Springs, Louisiana, for plaintiffs.

Dan D. Schaneville, Schaneville & Baringer, Baton Rouge, Louisiana, for defendants.

## RULING ON MOTIONS

JOHN V. PARKER, Chief Judge.

This matter is before the court on the following motions: (1) Motion for Summary Judgment by the defendants, Asset Services, Inc., Robie Casanova, and Beverly Casanova (collectively "Asset Services"); (2) Motion for Summary Judgment by the defendant, Credit Bureau of Baton Rouge (" the Credit Bureau"); (3) Motion for Summary Judgment by the third party defendant Ochsner Clinic ("Ochsner"). The third party plaintiff, Asset Service, has opposed Ochsner's Motion for Summary Judgment, and the plaintiffs, Brian Davis, Lisa Davis, and Lia Honore have opposed the Motions for Summary Judgment filed by Asset Services and Ochsner. There is no need for oral argument. Jurisdiction is based on 28 U.S.C. § 1331 pursuant to 15 U.S.C. § 1601, et al.

## I. FACTS AND PROCEDURAL POSTURE

In 1995, suspecting a theft in its accounting department in its Baton Rouge clinic, Ochsner hired Asset Services, a local investigation firm, to investigate. During its investigation, Asset Services obtained credit reports from the Credit Bureau on several Ochsner employees and their spouses. Included among the names in this list of persons were the plaintiffs.

Plaintiffs Lisa Honore and Linda Davis were both employed in Ochsner's accounting department at the time of the alleged theft. However, Plaintiff Brian Davis, the husband of Linda Davis, was never employed by Ochsner.

Originally, plaintiffs brought this civil action in the 19th Judicial District Court of Louisiana against Asset Services. Plaintiffs allege that Asset Services violated the Fair Credit Reporting Act by "willfully and knowingly" obtaining the plaintiffs' consumer reports from the Credit Bureau for an impermissible purpose and/or under false pretense.[1] Asset Services argues that it believed the list was provided to them by Ochsner Clinic for a permissible purpose and contained names of only Ochsner employees. In addition, Asset Services brought a third party demand against Ochsner seeking indemnification should the plaintiffs succeed on the main demand.

Upon being brought into the suit, Ochsner removed plaintiffs' claim to this court. Thereafter, the plaintiffs amended their petition alleging that the Credit Bureau also violated the Fair Credit Reporting Act by "willfully and knowingly" releasing the report for an impermissible purposes and/or under false pretenses.[2] The plaintiffs do not assert any claim against Ochsner. Asset Services, Ochsner and the Credit Bureau have each moved for summary judgment.

In accordance with Uniform Local Rule 56.1, Ochsner, Asset Services, and the Credit Bureau have submitted Statements of Uncontested Material Facts (doc. no. 18; doc. no. 823; doc. no. 25).[3]

1. Original Petition of Bryan Davis, Linda Davis, and Lia Honore, ¶ 3.

2. Plaintiffs' Supplemental Petition, doc. no. 8, ¶ 2.

3. The Credit Bureau of Baton Rouge has submitted the following statements of uncontested material facts:

(1) In order to access the Credit Bureau's credit information database, a subscriber must sign a membership service agreement.
(2) Asset Service, Inc., a former subscriber of the Credit Bureau, executed a membership service agreement certifying that it would ask the credit bureau for credit information only when it had a permissible purpose under the Fair Credit Reporting Act.
(3) Prior to the events complained of, the Credit Bureau had received no complaints concerning Asset Services, Inc. accessing credit information for impermissible purposes.

Asset Services has submitted the following statements of uncontested material facts:

(1) Plaintiffs Linda Davis and Lia Honore were, at all times pertinent to their claims, employees of Ochsner Clinic of Baton Rouge, Inc. ("Ochsner").
(2) Ochsner, during the time of Plaintiffs Linda Davis and Lia Honore's employment, received a report of money missing form the accounting department. An employee of the accounting department made this report.
(3) Ochsner, contacted Defendant, Asset Services, Inc. and requested accident reports, driver's license information, information on vehicles owned, and a check of civil and criminal records for employees of Ochsner who worked in the accounting department.
(4) Ochsner also advised the Defendants that credit reports were necessary and should be included in the report to be provided to them.
(5) Plaintiffs provided a list of what Defendants believed to be employees of Ochsner's to Asset Services, Inc., Beverly Casanova, and Robie Casanova.
(6) 15 U.S.C. 1681(b) provides a list of permissible purposes for which credit reports may be legally obtained under the Fair Credit reporting Act, which included employment purposes 15 U.S.C. § 1681(b)(3)(B).
(7) Defendants believed that Ochsner intended to use these reports for the legitimate employment purposes which they represented to defendants, and that all persons contained in the list provided to them were employees of Ochsner.
(8) On or about January 6, 1997. Plaintiffs filed suit against Defendants, alleging that Defendants violated the Fair Credit Reporting Act. The instant lawsuit was removed to this Federal Court pursuant to 28 U.S.C.A. § 1441, on or about May 30, 1997.

Ochsner Clinic has submitted the following statements of uncontested material facts:

(1) Two of the plaintiffs, Linda Davis and Lia Honore, are former Ochsner employees who were employed by Ochsner Clinic at the time Asset Service, Inc. obtained the

Under the Uniform Local Rules, "Each copy of the papers opposing a motion for summary judgment shall include a separate, short, and concise statement of material facts as to which there exist a genuine issue to be tried. All material facts set forth in the statement (of material facts) required to be served by the moving party will be deemed admitted, for the purposes of the motion, unless specifically denied".[4] The parties opposing the motions for summary judgment have not provided this court with any separate statements of material facts. Therefore, the undisputed facts submitted by the moving parties are admitted for the purpose of these motions.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law".[5] The court must view facts and inferences from the evidence in the light most favorable to the non-moving party.[6] Once the moving party has met its burden, the non-moving party, by submitting specific facts, must demonstrate that there is a genuine issue of material fact.[7]

The movant bears the initial responsibility of asserting the basis for his motion.[8] However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case."[9] Once the movant produces such evidence, the non-movant must then direct the court's attention to evidence in the record sufficient to establish a genuine issue of material fact.[10] Mere conclusory allegations, however, are not competent summary judgment evidence and will not defeat a motion for summary judgment.[11]

If the evidence, viewed in the light most favorable to the non-moving party, is sufficient for a jury to issue a verdict its favor, then rule 56(c) mandates the entry of summary judgment.[12]

credit reports at issue in this litigation. The third, Bryan Davis, is plaintiff Linda Davis' husband, and he was her husband at the time the credit reports at issue were obtained.

(2) In late 1995, Ochsner suspected the theft of several thousand dollars in its Baton Rouge clinic. Ochsner hired Asset Service, Inc., a local private investigation firm, to investigate the theft. Mr. and Mrs. Casanova own the firm and are its only employees.

(3) On the theory that Ochsner employees may have stolen the money, Asset Service obtained credit reports on several Ochsner employees and their spouses, including the plaintiffs. Asset Service subscribed to the on-line credit report services of the Credit Bureau of Baton Rouge, Inc., which is also a defendant, and used this service to obtain the reports.

(4) Ochsner disclosed its purposes to Asset Service. Asset Service knew it was investigating a possible theft, and it was Asset Service that suggested the credit checks to find the guilty parties by examining possible motives.

(5) Ochsner asked for the investigation and allowed Asset Service to obtain the credit reports for the purpose of determining whether to retain the employees it suspected and to otherwise use in evaluating their employment status with Ochsner.

4. ULLR 56.2M.

5. Fed.R.Civ.P. 56(c)

6. *Crescent Towing v. M/V Anax,* 40 F.3d 741, 743 (5th Cir.1994).

7. *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 585–587, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986).

8. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

9. *Id.* at 325, 106 S.Ct. at 2554.

10. *Id.* at 477 U.S. 322, 106 S.Ct. at 2552.

11. Fed.R.Civ.Proc. 56(e); *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.1992); *Galindo v. Precision American Corp.,* 754 F.2d 1212–1216 (5th Cir.1985).

## III. THE FAIR CREDIT REPORTING ACT

Congress enacted the Fair Credit Reporting Act as a consumer protection statute. The Act requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy and proper utilization of such information".[13] Although much of the Act regulates the behavior of the credit reporting agencies, it also extends to the "users" of the credit information.[14] The term "users" refers not only to the ultimate destination of a credit report but also encompasses the person who acquires it for another.[15]

Therefore, both Ochsner and Asset Services, are considered users under the Act.

Section 1681b of the Fair Credit Reporting Act states, in pertinent part: "a consumer reporting agency may furnish a consumer report under the following circumstances and no other: ... (3) To a person which it has reason to believe—... (B) intends to use the information for employment purposes".[16] Consumer reporting agencies and users of information can be liable both criminally and civilly under the Act for violating this section.[17] Civilly, a reporting agency or user is liable when there is either a willful violation or negligent non-compliance with the statutory provisions of the Act.[18] Although their

12. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Topalian*, 954 F.2d at 1131.

13. 15 U.S.C. § 1681(b).

14. *Hansen v. Morgan*, 582 F.2d 1214 (9th Cir.1978).

15. *Id.* at 1220.

16. 15 U.S.C. § 1681b.

17. See 15 U.S.C. §§ 1681*o*, 1681n, and 1681q.

18. 15 U.S.C. § 1681n. Civil liability for willful noncompliance

(a) In general
Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the

costs of the action together with reasonable attorney's fees as determined by the court.
(b) Civil liability for knowing noncompliance
Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.
(c) Attorney's fees
Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.
15 U.S.C. § 1681*o*. Civil liability for negligent noncompliance
(a) In general.
Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
(1) any actual damages sustained by the consumer as a result of the failure;
(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
(b) Attorney's fees
On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harass-

original and supplemental complaints are silent as to what section of the Act is claimed to be violated, the plaintiffs do allege that there were "willful and knowing" violations of the Act by Asset Services and the Credit Bureau. The original complaint and its supplement are silent as to any acts of negligence on the part of the defendants. Therefore, the applicable section of the Fair Credit Reporting Act that pertains to this case is 15 U.S.C. § 1681n, which authorizes, *inter alia*, punitive damages.

Each movant in this case has submitted different grounds upon which summary judgment should be granted. Therefore, this court will consider each movant's motion individually.

## IV. CREDIT BUREAU'S MOTION FOR SUMMARY JUDGMENT

The Credit Bureau is a credit reporting agency as defined under the Fair Credit Reporting Act.[19] Under 15 U.S.C. 1681e(a), a credit reporting agency is prohibited from furnishing reports to any one it reasonably believes will use the report for an improper purpose. A credit reporting agency is further required to limit the furnishing of consumer reports to the permissible purposes listed in 15 U.S.C. § 1681b by requiring "prospective users of the information [to] identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose".[20]

■ The Credit Bureau was clearly in compliance with the requirement of the

Act to maintain a reasonable procedure to access consumer credit reports. It is undisputed that Assets Services obtained plaintiffs' credit records by subscribing to an on-line database maintained by the Credit Bureau. In the Credit Bureau membership agreement, Asset Services certified that it would only ask the Credit Bureau for:

> "... the subscriber's own exclusive use and only on the following subjects: (a) on bonafide applicants for credit; (b) on accounts already on the Subscriber's books, ...; and (c) on employers or applicants for employment." [21]

Asset Services also stated in the agreement that it was a collection agency, and its primary purpose in using the services was for collection and skip-tracing (finding persons who skip out on loan payments). Under these circumstances, the Credit Bureau clearly had no reason to doubt that Asset Services was accessing its on-line database for a permissible purpose.[22] The plaintiffs have not submitted any evidence to prove that the Credit Bureau knew or should have had reason to know that Asset Services would access the report for an impermissible purpose. The fact that Asset Services lacked knowledge of permissible purposes under the Act (as claimed by the plaintiffs) does not disprove these facts. Plaintiffs have failed to introduce any material evidence to show that the Credit Bureau had reason to believe that a user of its services was obtaining credit reports for an impermissible purpose. Therefore, the Credit Bureau is entitled to judgment as a matter of law.

ment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

19. A consumer reporting agency is defined in the Fair Credit Reporting Act as an agency that regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information for the purpose of producing consumer reports to third parties. 15 U.S.C. § 1681a(f).

20. 15 U.S.C. § 1681e(a).

21. See Exhibit A of the Deposition of Stephen Uffman, The Credit Bureau's Motion for Summary Judgment, Exhibit 6.

22. See *Wilson v. Sessoms*, No. 4:9CV01031, United States District Court, Middle District of North Carolina, March 16, 1998, attached to the Credit Bureau's Motion in Support of Summary Judgment, Exhibit 8.

## V. ASSET SERVICES' MOTION FOR SUMMARY JUDGMENT

Plaintiffs allege that Asset Services "willfully and knowingly" obtained the plaintiffs' consumer reports from the Credit Bureau for an impermissible purpose and/or under false pretense.[23] Whether a consumer report has been obtained under false pretenses is ordinarily determined by a reference to the permissible purposes for which a consumer report may be obtained.[24] Thus, the concepts of "false pretenses" and "permissible purposes" are often used interchangeably.[25]

Under the Fair Credit Reporting Act, it clearly was permissible for the Credit Bureau to release to Ochsner and for Ochsner to obtain credit information on its employees, Ms. Lisa Davis and Ms. Lia Honore.[26] The report, in this case, was to be used "to evaluate possible changes in its (Ochsner's) employment status, because it obviously would not want to keep around employees who were stealing from it".[27] Ochsner's purpose in obtaining the report, therefore, was to decide whether to retain employees, a permissible employment purpose under the Act.[28]

■ Plaintiffs argue, however, that although Ochsner may have had a permissible purpose in accessing the credit reports of its employees, Asset Services did not because it was not the employer of the plaintiffs. This argument, however, is without merit. When the client's interest is permissible under § 1681b, then the investigator's interest must likewise be permissible.[29] Asset Services did not have an independent interest in requesting the credit report, and was clearly acting on behalf of Ochsner when it did. As a retained investigative agency, the interest of Asset Services in requesting information on its principal's employees is a permissible purpose under Section 1681b. Therefore, as a matter of law, Asset Services did not obtain the reports of Ms. Linda Davis and Ms. Lia Honore under false pretenses.

■ Although it is permissible for an employer or his agent to access the credit reports of employees for employment purposes, it is not permissible to obtain a credit report on a spouse of the employee for this purpose.[30] There is no authority under the Fair Credit Reporting Act for a credit reporting agency or a user to obtain a report on anyone except for the reasons enumerated in Section 1681b.[31] The record is clear that the plaintiff, Bryan Davis, was not at any time employed by Ochsner Clinic. His only relationship to Ochsner was his marriage to an employee. Under 1681b, there was no permissible purpose in obtaining Bryan Davis' credit report.

■ Although Asset Services admits that it obtained an employment report on a

---

23. Original Petition of Bryan Davis, Linda Davis, and Lia Honore, ¶ 3.

24. *Hansen*, 582 F.2d at 1219–20; *Boothe v. Credit Data*, 557 F.Supp. 66, 71 (S.D.N.Y. 1982).

25. *Id.; Zamora v. Valley Fed. Sav. & Loan Assoc.*, 811 F.2d 1368, 1370 (10th Cir.1987)

26. 15 U.S.C. § 1681b.

27. Ochsner Clinic's Memorandum in Support of Summary Judgement, p. 20

28. A report for employment purposes is "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee". 15 U.S.C. § 1681a(h). The Federal Trade Commission regulations, which provide guidance in interpreting the Acts provisions, states:

"An employer may obtain a consumer report on a current employee in connection with an investigation of the disappearance of money from employment premises, because "retention as an employee" is included in the definition of employment purposes." 16 C.F.R. Pt. 600, App.

29. See, e.g., *King v. MTA Bridges and Tunnels*, 933 F.Supp. 220 (E.D.N.Y.1996); *Baker v. Bronx–Westchester Investigations, Inc.*, 850 F.Supp. 260 (S.D.N.Y.1994); *Stover v. O'Connell Associates, Inc.*, 1994 WL 146794 (D.Md. 1994).

30. *Zamora*, 811 F.2d 1368

31. *Id.*

non-employee of Ochsner, it argues that it had a good faith belief that all the names included on the list were Ochsner employees and it did not willfully and knowingly violate the Fair Credit Reporting Act. The willfulness requirement of Section 1681n is synonymous with the requirement of intent in criminal statutes.[32] Because willful conduct allows successful plaintiffs to collect punitive damages, this requirement has been strictly applied in cases involving the Fair Credit Reporting Act.[33] The fact that Ochsner provided a list of names to Asset Services, and Asset Services believed these names to be names of employees of Ochsner is not in dispute. This court finds that no reasonable fact finder could conclude that Asset Services had the requisite intent to willfully violate the provisions of the Fair Credit Reporting Act. Asset Services is, therefore, entitled to judgment as a matter of law.

### VI. OCHSNER'S MOTION FOR SUMMARY JUDGMENT

Since Ochsner was brought into this suit through a third party demand by Asset Services and Ochsner was not made a party to the main demand, this court needs not go into the merits of Ochsner's claim. Asset Services is not liable for any willful or knowing violation of the Act. Therefore, Ochsner is also not liable and therefore, is entitled to judgment as a matter of law on the third party demand.

Accordingly, for the reasons assigned, The motions for summary judgment by the defendants, the Credit Bureau of Baton Rouge (Doc. 24) and Asset Services, Inc., Robie Casanova, and Beverly Casanova (Doc. 21), and the motion for summary judgment by the third party defendant, Ochsner Clinic, (Doc. 17) are hereby **GRANTED.** There shall be judgment in

favor of Ochsner on the third party complaint and in favor of defendants on the main demand.

---

**32.** See *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir.1986) ("there is no evidence that [the defendants] knowingly and intentionally committed an act in conscious disregard for the rights of others.")

**33.** See, e.g., *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226–27 (3rd Cir.1997) (reviewing willful requirement of § 168 In and holding that "to justify an award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations")