**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA E. PINTOS,
          *Plaintiff-Appellant,*

          v.

PACIFIC CREDITORS ASSOCIATION;
EXPERIAN INFORMATION SOLUTIONS,
INC.,
          *Defendants-Appellees.*

No. 04-17485

D.C. No.
CV-03-05471-CW

MARIA E. PINTOS,
          *Plaintiff-Appellee,*

          v.

PACIFIC CREDITORS ASSOCIATION,
          *Defendant,*

          and

EXPERIAN INFORMATION SOLUTIONS,
INC.,
          *Defendant-Appellant.*

No. 04-17558

D.C. No.
CV-03-05471-CW

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted
January 9, 2007—San Francisco, California

Filed September 21, 2007

12947

Before: Mary M. Schroeder, Chief Circuit Judge,
Richard R. Clifton, Circuit Judge, and George P. Schiavelli,*
District Judge.

Opinion by Judge Clifton

*The Honorable George P. Schiavelli, United States District Judge for
the Central District of California, sitting by designation.

**COUNSEL**

Andrew J. Ogilvie (argued), Kemnitzer, Anderson, Barron & Ogilvie, LLP, San Francisco, California, for appellant/cross-appellee Maria E. Pintos.

Daniel J. McLoon (argued), Jones Day, Los Angeles, California; Adam R. Sand and Marc S. Carlson, Jones Day, San Francisco, California, for appellee/cross-appellant Experian Information Solutions, Inc.

Andrew M. Steinheimer (argued) and Mark E. Ellis, Ellis Coleman Poirier LaVoie & Steinheimer, LLP, Sacramento, California, for appellee Pacific Creditors Association.

**OPINION**

CLIFTON, Circuit Judge:

Maria E. Pintos appeals the district court's summary adjudication of her claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Pintos contends that Pacific Creditors Association violated the FCRA by obtaining, without any FCRA-sanctioned purpose, a credit report on her from Experian Information Solutions, Inc., a credit reporting agency. Pintos also argues that Experian violated the FCRA by furnishing the report to PCA.

The district court granted summary judgment in favor of the defendants. Relying on our decision in *Hasbun v. County of Los Angeles*, 323 F.3d 801 (9th Cir. 2003), the court held that PCA was authorized to obtain Pintos's credit report under 15 U.S.C. § 1681b(a)(3)(A) because it was attempting to collect a debt from Pintos. *Hasbun* held that debt collection was a permissible purpose for obtaining a credit report, but we decided that case prior to the enactment of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952. FACTA makes clear that debt collection is a permissible purpose for obtaining a credit report under § 1681b(a)(3)(A) only in connection with a "credit transaction" in which a consumer has participated directly and voluntarily. Because PCA obtained a credit report on Pintos unrelated to any such transaction, we reverse the district court with respect to Pintos's claims against PCA and remand for further proceedings with respect to damages and to Experian's liability.

## I.  Background

Police officers found a sport utility vehicle belonging to Maria Pintos parked on the street in San Bruno, California on May 29, 2002. The vehicle's registration was expired. At police direction, the vehicle was towed, and the towing com-

pany, P&S Towing, obtained a lien on the vehicle for the cost of towing and impound. P&S later sold the vehicle when Pintos failed to reclaim it or pay the outstanding charges. Since the vehicle's sale price did not cover the amount owed, P&S asserted a deficiency claim against Pintos and later transferred the claim to PCA, a collection agency.[1]

PCA sought and obtained a credit report on Pintos from Experian on December 5, 2002, in connection with its effort to collect on the debt assigned by P&S. Pintos subsequently filed a complaint against PCA and Experian under the FCRA. She alleged that PCA violated the FCRA by obtaining her credit report without any FCRA-sanctioned purpose and that Experian was liable for providing the report to PCA.

PCA and Experian filed separate motions for summary judgment. Both argued that, under 15 U.S.C. § 1681b(a)(3)(A), PCA had a permissible purpose for obtaining Pintos's credit report because it was seeking to collect a debt, the towing deficiency claim. Experian further argued that it was not liable for a violation because it had fulfilled its obligations under 15 U.S.C. § 1681e, which immunizes a reporting agency against FCRA violations by the agency's subscribers so long as the agency takes certain steps.

Pintos filed a cross-motion for partial summary judgment

---

[1]California Civil Code § 3068.1(a) provides for liens "dependent upon possession for the compensation to which [a] person is legally entitled for towing, storage, or labor associated with recovery or load salvage of any vehicle subject to registration that has been authorized to be removed by a public agency." The statute also allows for lien sales with varying procedures dependant on the value of the vehicle towed and stored. *See* Cal. Civ. Code §§ 3068.1(b)-3068.1(c). In addition, a tow truck operator with a lien pursuant to § 3068.1 "has a deficiency claim against the registered owner of the vehicle if the vehicle is not leased or leased with a driver for an amount equal to the towing and storage charges, not to exceed 120 days of storage . . . less the amount received from the sale of the vehicle." Cal. Civ. Code § 3068.2(a).

on the issues of permissible purpose and Experian's negligence. She attached to that motion several Experian documents detailing the company's internal procedures for complying with its FCRA obligations. Claiming these documents were confidential and proprietary, Experian filed a motion to seal them.

The district court granted the defendants' motions for summary judgment on November 9, 2004. Relying on *Hasbun v. County of Los Angeles*, 323 F.3d 801 (9th Cir. 2003), the court agreed that debt collection was a permissible purpose under § 1681b(a)(3)(A) for PCA to obtain Pintos's credit report. The court denied Experian's motion to seal documents, without explanation.

Pintos filed a timely notice of appeal on December 8, 2004. Experian cross-appealed the district court's denial of its motion to seal on December 9, 2004. It also sought reconsideration by the district court of the denial of that motion. On April 29, 2005, the district court held that it lacked jurisdiction over the matter since Experian already appealed the order to this court. Nevertheless, the court stated that, if it had jurisdiction, it would grant Experian's motion under *Phillips v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002), and it stayed its prior order on the subject pending the appeal.

## II.   Discussion

We review grants of summary judgment de novo. *ACLU v. City of Las Vegas*, 466 F.3d 784, 790 (9th Cir. 2006). Cross-motions for summary judgment are evaluated separately under this same standard. *Id.* at 790-91; *Hoopa Valley Indian Tribe v. Ryan*, 415 F.3d 986, 989-90 (9th Cir. 2005).

### A.   *15 U.S.C. § 1681b(a)(3)(A)*

"Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer priva-

cy." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). Those two goals potentially lie in tension, and the FCRA strikes a balance between them. The Act authorizes credit reporting agencies to "furnish . . . consumer report[s]" because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. §§ 1681(a)(3), 1681b(a). At the same time, the FCRA "requir[es] credit reporting agencies to maintain reasonable procedures designed to assure maximum possible accuracy of the information contained in credit reports," limits access to credit reports except for "certain statutorily enumerated purposes," and creates "a private right of action allowing injured consumers to recover any actual damages caused by negligent violations and both actual and punitive damages for willful noncompliance." *Andrews*, 534 U.S. at 23 (citations and internal quotation marks omitted).

**[1]** Statutory limitations on the furnishing of credit reports are particularly relevant here. Section 1681b(a) authorizes the furnishing of credit reports only for a limited number of purposes, including, under § 1681b(a)(3)(A), the furnishing of reports "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Concluding that debt collection is the "collection of an account" described in this subsection, the district court held that the statute authorized PCA to obtain Pintos's credit report.

**[2]** Section 1681b(a)(3)(A) does not provide that all "account collection" is a permissible purpose for obtaining credit reports, however. Debt collections are authorized to obtain credit reports on debtors only for account collection "in connection with a credit transaction involving the consumer." 15 U.S.C. § 1681b(a)(3)(A) (authorizing the release of credit reports "in connection with a credit transaction involving the consumer . . . *and* involving the . . . review or collection of an account") (emphasis added).

**[3]** The FCRA does not define the term "credit transaction" and initially did not define the term "credit." This changed with the adoption of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"). In FACTA, Congress amended the FCRA by, *inter alia*, defining credit for purposes of the statute as amounting to a particular kind of debt: "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor."[2] *See* Pub. L. No. 108-159, § 111, 1955 (codified as amended at 15 U.S.C. § 1691a(d)). By defining credit as a "right . . . to defer payment," FACTA indicates that a § 1681b(a)(3)(A) "credit transaction" is a transaction in which the consumer directly participates and voluntarily seeks credit. *Accord Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005) (holding that § 1681b(a)(3)(A) applies "only if the consumer initiates [a credit] transaction"). Not all "debt" involves a "credit transaction."

Interpreting "credit transaction" to require voluntary consumer participation comports with the FCRA's underlying goal of protecting consumer privacy. *See Andrews*, 534 U.S. at 23 (noting that Congress enacted the FCRA "to protect consumer privacy," among other goals, and identifying § 1681b specifically as embodying this purpose). A consumer who chooses to initiate a credit transaction implicitly consents to the release of his credit report for related purposes. By requiring this consent, § 1681b(a)(3)(A) forges a "direct link" between a consumer's search for credit and the furnishing of his credit report. *See Stergiopoulos*, 427 F.3d at 1047. This link is critical for providing the consumer with some degree

---

[2]Congress enacted FACTA to "amend the Fair Credit Reporting Act, to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes." Pub. L. No. 108-159, 117 Stat. at 1952. Only FACTA's defining of "credit" for FCRA purposes is relevant here.

of privacy protection in accordance with the underlying purposes of the FCRA. *Id.* ("If the connection between a consumer's search and a [credit] request is clear, it is unlikely that the request will infringe the consumer's privacy interests, for it will 'involve' the plaintiff directly.").

**[4]** Here, Pintos did not voluntarily seek credit. Rather, the debt arose by statute when the lien sale price of her vehicle failed to cover the towing and impound charges. *See* Cal Civ. Code § 3068.2. Pintos never sought to have her vehicle towed, and she incurred the resulting debt involuntarily. Consequently, no one granted her "credit" as defined by § 1681a(r)(5), and there was no "credit transaction" within the meaning of § 1681b(a)(3)(A). PCA, therefore, had no purpose specified as permissible under the statute to obtain Pintos's credit report.

In reaching the opposite conclusion, the district court relied on our decision in *Hasbun*. *Hasbun* presented the question of whether a government agency looking to enforce a child support judgment could obtain a credit report on a judgment debtor under § 1681b(a)(3)(A). 323 F.3d at 802-03. The court determined that debt collection was generally a permissible purpose for obtaining credit reports under § 1681b(a)(3)(A), and that the government, which stood in the shoes of the judgment creditor, could, like any other creditor, obtain credit reports for debt collection. *Id.* at 803-04, 805 (holding that the government agency "was engaged in the 'collection of an account' under 15 U.S.C. § 1681b(a)(3)(A) and therefore had a permissible purpose for obtaining [the credit report]"). Relying on *Hasbun*, the district court concluded that PCA had a permissible purpose to obtain Pintos's credit report because it, too, was engaged in debt collection.

**[5]** This reading of *Hasbun* was not unreasonable at the time. *Hasbun* was decided prior to the 2003 FACTA amendments, however, and it must be reevaluated in light of the

amended FCRA.[3] *See United States v. McNeil*, 362 F.3d 570, 574 (9th Cir. 2004) (holding that "when Congress amends statutes, our decisions that rely on the older versions of the statutes must be reevaluated in light of the amended statute"). By defining "credit" for purposes of the FCRA, FACTA helped to clarify the specific circumstances in which credit reporting agencies may furnish credit reports to debt collectors under § 1681b(a)(3)(A). Post-FACTA, it is apparent that debt collection is not *always* a permissible purpose for obtaining credit reports. To the extent that the *Hasbun* court read § 1681b(a)(3)(A) more broadly, its pre-FACTA interpretation is no longer persuasive.[4]

[6] Because PCA obtained Pintos's credit report for debt collection efforts unrelated to a proper credit transaction, it violated the FCRA.[5] Accordingly, we reverse the district court's summary judgment in favor of the defendants.

---

[3]We are not faced with the question addressed in *Hasbun*, that is, "when and how a child support enforcement agency may lawfully obtain the consumer credit report of an individual who has fallen behind in paying court-ordered child support." *Hasbun*, 323 F.3d at 802. We thus take no position on the merits of that decision and merely reevaluate § 1681b(a)(3)(A) in light of FACTA and the facts presented by this case.

[4]The same is true of the Federal Trade Commission's (FTC) nonbinding commentary regarding judgment creditors, on which the *Hasbun* court relied. *See Hasbun*, 323 F.3d at 803 (citing 16 C.F.R. Pt. 600, App. at 509 (2002)). Although the FTC commentary suggests that a "judgment creditor has a permissible purpose to receive a consumer report on the judgment debtor for use in connection with collection of the judgment debt, because it is in the same position as any creditor attempting to collect a debt from a consumer," *id.*, a 2002 interpretation of the FCRA provides little insight into the post-FACTA meaning of § 1681b(a)(3)(A). The pre-FACTA authorities relied on by the *Hasbun* court are unpersuasive for the same reason. *See, e.g.*, *Duncan v. Handmaker*, 149 F.3d 424, 428 (6th Cir.1998); *Baker v. Bronx-Westchester Investigations, Inc.*, 850 F.Supp. 260, 262-63 (S.D.N.Y. 1994).

[5]PCA and Experian only argue that § 1681b(a)(3)(A) authorized PCA to obtain Pintos's credit report. Thus, we need not determine whether PCA had a permissible purpose under any other § 1681b subsection. In addition, the parties do not argue, and we do not address, whether PCA's pre-FACTA conduct may subject it to penalties under a post-FACTA reading of the FCRA.

*B.    15 U.S.C. § 1681e*

We next consider whether Experian is also liable for PCA's violation of the FCRA. The district court did not reach this issue, as it determined, incorrectly, that PCA had a permissible purpose to obtain Pintos's credit report. Experian argues that because 15 U.S.C. § 1681e immunizes it from subscribers' FCRA violations, the statute offers an alternative basis to affirm the summary judgment with respect to its liability.

A credit reporting agency may be liable for its subscriber's violation when the agency fails to comply with the statutory obligations imposed by 15 U.S.C. § 1681e. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Experian argues that because PCA gave it a "blanket certification" — a written promise to use Experian's credit reports only for permissible purposes — the agency satisfied its statutory obligations under § 1681e. We disagree.

**[7]** Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law. After prospective subscribers "certify the purposes for which [credit] information is sought, and certify that the information will be used for no other purpose," the reporting agency must make "a reasonable effort" to verify the certifications and may not furnish reports if "reasonable grounds" exist to believe that reports will be used impermissibly. 15 U.S.C. § 1681e(a). Under the plain terms of § 1681e(a), a subscriber's certification cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use.[6] Blanket certification can-

---

[6]Experian suggests that *Davis v. Asset Servs.*, 46 F. Supp. 2d 503, 508 (M.D. La. 1998), *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 71 (S.D.N.Y. 1982), and *Hiemstra v. TRW, Inc.*, 195 Cal. App. 3d 1629, 1634 (Cal. Ct. App. 1987) support the contention that blanket certifications will satisfy a credit reporting agency's obligations under § 1681e(a). While

not eliminate all genuine issues of material fact with regard to Experian's liability.

## C.   Experian's Motion to File Documents Under Seal

Two standards generally govern motions to seal documents like the one at issue here.[7] First, a "compelling reasons" standard applies to most judicial records. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (holding that "[a] party seeking to seal a judicial record . . . bears the burden of overcoming . . . the 'compelling reasons' standard"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003). This standard derives from the common law right "to inspect and copy public records and documents, including judicial records and documents." *Kamakana*, 447 F.3d at 1178 (citation and internal quotation marks omitted). To limit this common law right of access, a party seeking to seal judicial records must show that "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring

these cases hold that credit reporting agencies may rely on blanket certifications rather than having to verify credit requests individually, none provides that a blanket certification by itself is sufficient to satisfy the § 1681e inquiry. *See, e.g.*, *Davis*, 46 F. Supp.2d at 508 (holding that the defendant complied with the requirements of § 1681e(a) because it obtained a blanket certification *and* because the plaintiff did not submit "any evidence to prove that the [defendant] knew or should have had reason to know that [the subscriber] would access the report for an impermissible purpose"); *Boothe*, 577 F. Supp. at 71 (finding no violation where the primary business of the requesting entity used reports for a permissible purpose and there was "no showing that TRW knew of the improper purpose for the report issued"). Even if Experian did not have to verify PCA's request for Pintos's credit report individually, § 1681e(a) still required proper verification of PCA generally.

[7]A third standard covers the "narrow range of documents" such as "grand jury transcripts" and certain "warrant materials" that "traditionally [have] been kept secret for important policy reasons." *Kamakana*, 447 F.3d at 1178. No party asserts this third standard is relevant here.

disclosure." *Id.* (internal quotation marks and citations omitted).

"Private materials unearthed during discovery" are not part of the judicial record. *Id.* at 1180. A different standard applies to that category, from Rule 26(c) of the Federal Rules of Civil Procedure, which provides that a trial court may grant a protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

The relevant standard for purposes of Rule 26(c) is whether " 'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). This "good cause" standard presents a lower burden for the party wishing to seal documents than the "compelling reasons" standard. The cognizable public interest in judicial records which underlies the "compelling reasons" standard does not exist for documents produced between private litigants. *See Foltz*, 331 F.3d at 1134 ("When discovery material is filed with the court . . . its status changes."); *Kamakana*, 447 F.3d at 1180 (holding that "[d]ifferent interests are at stake with the right of access than with Rule 26(c)").

The "good cause" standard is not limited to discovery. In *Phillips*, we held that "good cause" is also the proper standard when a party seeks access to previously sealed discovery attached to a nondispositive motion. *Id.* at 1213 ("[W]hen a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted."). Nondispositive motions "are often 'unrelated, or only tangentially related, to the underlying cause of action,' " and, as a result, the public's interest in accessing dispositive materials "do[es] not apply with equal force" to nondispositive materials. *Kamakana*, 447 F.3d at 1179 (citation omitted). In light of the weaker public interest in nondisposi-

tive materials, we apply the "good cause" standard when parties wish to keep them under seal. Applying the "compelling interest" standard under these circumstances would needlessly "undermine a district court's power to fashion effective protective orders." *Foltz*, 331 F.3d at 1135.

Experian wishes to seal documents attached to Pintos's cross-motion for summary judgment. Rule 26(c) does not govern these documents because they are not "private materials unearthed during discovery" but have become part of the judicial record. *Kamakana*, 447 F.3d at 180. Additionally, the documents do not fall within the *Phillips* exception to the general presumption of access because Pintos's motion was dispositive.[8] *See Foltz*, 331 F.3d at 1135 (holding that the *Phillips* exception is "expressly limited to the status of materials . . . attached to a non-dispositive motion"). Consequently, Experian must overcome a strong presumption of access by showing that "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1180 (internal quotation marks and citations omitted).

Under the "compelling reasons" standard, a district court must weigh "relevant factors,"[9] base its decision "on a com-

[8]This case differs slightly from *Phillips*, in which a nonparty sought access to court records previously filed under seal. *Phillips*, 307 F.3d at 1209. Here no third party seeks access to previously sealed documents, but this is a distinction without a difference. It is undisputed that a "strong presumption of access to judicial records applies fully to dispositive pleadings." *Kamakana*, 447 F.3d at 1179. Accordingly, whether a third party has sought access is immaterial when a party moves to seal documents already filed with the court. *See Kamakana*, 447 F.3d at 1179 (holding simply that " 'compelling reasons' must be shown to seal judicial records attached to a dispositive motion").

[9]"Relevant factors" include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad*, 49 F.3d at 1434 (quoting *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 170 (9th Cir. 1990)).

pelling reason," and "articulate the factual basis for its ruling
. . . without relying on hypothesis or conjecture." *Hagestad v.
Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). A proper anal-
ysis is reviewed for abuse of discretion. *Foltz*, 331 F.3d at
1135. An order that fails to articulate its reasoning must be
vacated and remanded because "[m]eaningful appellate
review is impossible" when the appellate panel has no way of
knowing "whether relevant factors were considered and given
appropriate weight." *Hagestad*, 49 F.3d at 1434-35 (internal
quotation marks omitted).

The district court's November 9, 2004 denial of Experian's
motion to seal offered no explanation for the decision. The
explanation provided in the court's April 29, 2005 order deny-
ing Experian's motion to alter or amend judgment did not fill
the gap. With the case already on appeal, the district court
denied Experian's motion on jurisdictional grounds but sug-
gested that it would grant Experian's motion if it still had
jurisdiction, staying its prior order to file the documents in the
public record pending our resolution of the appeal. According
to the district court, *Phillips* would govern the motion and
good cause existed for placing Experian's documents under
seal.

**[8]** Because the documents at issue here were attached to
a dispositive motion, however, *Phillips* does not provide the
proper standard. A determination by the district court that
good cause exists for sealing Experian's documents does not
establish that there are "compelling reasons" to do so. *See
Kamakana*, 447 F.3d at 1180 (holding that "a 'good cause'
showing . . . will not suffice to fulfill the 'compelling reasons'
standard that a party must meet to rebut the presumption of
access to dispositive pleadings and attachments"). Instead, the
court must decide whether compelling reasons exist to seal
the documents. *Foltz*, 331 F.3d at 1135-36. We vacate and
remand "for the making of findings in support of an[ ] order
on this issue," *Hagestad*, 49 F.3d at 1435, in light of the
proper legal standard.

**III.   Conclusion**

We reverse the district court's summary judgment in favor of defendants and remand for further proceedings. Additionally, we vacate the district court's order denying Experian's motion to seal documents and remand for consideration in light of the proper legal standard.

**REVERSED;   REMANDED   FOR   FURTHER   PRO-CEEDINGS.**