# TRW INC. *v.* ANDREWS

No. 00–1045.   Argued October 9, 2001—Decided November 13, 2001

20

GINSBURG, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, and BREYER, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment, in which THOMAS, J., joined, *post*, p. 35.

*Glen D. Nager* argued the cause for petitioner. With him on the briefs was *Daniel H. Bromberg.*

*Andrew Ryan Henderson* argued the cause for respondent. With him on the brief were *Carlyle W. Hall, Jr.,* and *Gerald L. Sauer.*

*Kent L. Jones* argued the cause for the United States et al. as *amici curiae* urging affirmance. On the brief were *Acting Solicitor General Underwood, Deputy Solicitor General Wallace, Edward C. DuMont, John D. Graubert, John F. Daly,* and *Lawrence DeMille-Wagman.**

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the running of the two-year statute of limitations governing suits based on the Fair Credit Reporting Act (FCRA or Act), as added, 84 Stat. 1127, and amended, 15 U. S. C. § 1681 *et seq.* (1994 ed. and Supp. V).[1] The time prescription appears in § 1681p, which sets out a general rule and an exception. Generally, an action to enforce any liability created by the Act may be brought "within two years from the date on which the liability arises." The exception covers willful misrepresentation of "any information required under [the Act] to be disclosed to [the plaintiff]": When such a representation is material to a claim under the Act, suit may be brought "within two years after [the plaintiff's] discovery . . . of the misrepresentation."

Section 1681p's exception is not involved in this case; the complaint does not allege misrepresentation of information that the FCRA "require[s] . . . to be disclosed to [the plaintiff]." Plaintiff-respondent Adelaide Andrews nevertheless contends, and the Ninth Circuit held, that § 1681p's generally applicable two-year limitation commenced to run on

---

*Richard J. Rubin, Joanne S. Faulkner, Willard P. Ogburn, Deborah M. Zuckerman, Stacy J. Canan,* and *Michael R. Schuster* filed a brief for the National Association of Consumer Advocates et al. as *amici curiae* urging affirmance.

[1] Congress has revised the FCRA extensively since the events at issue, but has not altered the provisions material to this case.

Andrews' claims only upon her discovery of defendant-petitioner TRW Inc.'s alleged violations of the Act.

We hold that a discovery rule does not govern § 1681p. That section explicitly delineates the exceptional case in which discovery triggers the two-year limitation. We are not at liberty to make Congress' explicit exception the general rule as well.

I

A

Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy. See 15 U. S. C. § 1681(a) (1994 ed.). As relevant here, the Act seeks to accomplish those goals by requiring credit reporting agencies to maintain "reasonable procedures" designed "to assure maximum possible accuracy of the information" contained in credit reports, § 1681e(b), and to "limit the furnishing of [such reports] to" certain statutorily enumerated purposes, § 1681e(a); 15 U. S. C. § 1681b (1994 ed. and Supp. V). The Act creates a private right of action allowing injured consumers to recover "any actual damages" caused by negligent violations and both actual and punitive damages for willful noncompliance. See 15 U. S. C. §§ 1681n, 1681o (1994 ed.).[2]

B

The facts of this case are for the most part undisputed. On June 17, 1993, Adelaide Andrews visited a radiologist's office in Santa Monica, California. She filled out a new patient form listing certain basic information, including her name, birth date, and Social Security number. Andrews handed the form to the office receptionist, one Andrea Andrews (the Impostor), who copied the information and thereafter moved to Las Vegas, Nevada. Once there, the Impos-

---

[2] Under 1996 amendments to § 1681n, a plaintiff may also recover statutory damages of between $100 and $1,000 for willful violations. See 15 U. S. C. § 1681n(a)(1)(A) (1994 ed., Supp. V).

tor attempted on numerous occasions to open credit accounts using Andrews' Social Security number and her own last name and address.

On four of those occasions, the company from which the Impostor sought credit requested a report from TRW. Each time, TRW's computers registered a match between Andrews' Social Security number, last name, and first initial and therefore responded by furnishing her file. TRW thus disclosed Andrews' credit history at the Impostor's request to a bank on July 25, 1994; to a cable television company on September 27, 1994; to a department store on October 28, 1994; and to another credit provider on January 3, 1995. All recipients but the cable company rejected the Impostor's applications for credit.

Andrews did not learn of these disclosures until May 31, 1995, when she sought to refinance her home mortgage and in the process received a copy of her credit report reflecting the Impostor's activity. Andrews concedes that TRW promptly corrected her file upon learning of its mistake. She alleges, however, that the blemishes on her report not only caused her inconvenience and emotional distress, they also forced her to abandon her refinancing efforts and settle for an alternative line of credit on less favorable terms.

On October 21, 1996, almost 17 months after she discovered the Impostor's fraudulent conduct and more than two years after TRW's first two disclosures, Andrews filed suit in the United States District Court for the Central District of California. Her complaint stated two categories of FCRA claims against TRW, only the first of which is relevant here.[3] See App. 15–17. Those claims alleged that TRW's

---

[3] The second alleged that TRW had collected information about the Impostor's activities and inaccurately attributed that activity to Andrews, in violation of its obligation under § 1681e(b) to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the

four disclosures of her information in response to the Impostor's credit applications were improper because TRW failed to verify, predisclosure, that Adelaide Andrews of Santa Monica initiated the requests or was otherwise involved in the underlying transactions. Andrews asserted that by processing requests that matched her profile on Social Security number, last name, and first initial but did not correspond on other key identifiers, notably birth date, address, and first name, TRW had facilitated the Impostor's identity theft. According to Andrews, TRW's verification failure constituted a willful violation of § 1681e(a), which requires credit reporting agencies to maintain "reasonable procedures" to avoid improper disclosures. She sought injunctive relief, punitive damages, and compensation for the "expenditure of time and money, commercial impairment, inconvenience, embarrassment, humiliation and emotional distress" that TRW had allegedly inflicted upon her. App. 15–16.

TRW moved for partial summary judgment, arguing, *inter alia,* that the FCRA's statute of limitations had expired on Andrews' claims based on the July 25 and September 27, 1994, disclosures because both occurred more than two years before she brought suit. Andrews countered that her claims as to all four disclosures were timely because the limitations period did not commence until May 31, 1995, the date she learned of TRW's alleged wrongdoing. The District Court, agreeing with TRW that § 1681p does not incorporate a general discovery rule, held that relief stemming from the July and September 1994 disclosures was time barred. *Andrews*

individual about whom [a] report relates." A jury resolved this claim in favor of TRW.

The complaint also stated FCRA claims against Trans Union Corporation, another credit reporting agency involved in the Impostor's conduct. In addition, Andrews brought a state-law claim against each defendant. The resolution of these claims is not at issue here.

v. *Trans Union Corp.*, 7 F. Supp. 2d 1056, 1066–1067 (CD Cal. 1998).[4]

The Court of Appeals for the Ninth Circuit reversed this ruling, applying what it considered to be the "general federal rule . . . that a federal statute of limitations begins to run when a party knows or has reason to know that she was injured." 225 F. 3d 1063, 1066 (2000). The court rejected the District Court's conclusion that the text of § 1681p, and in particular the limited exception set forth in that section, precluded judicial attribution of such a rule to the FCRA. "[U]nless Congress has expressly legislated otherwise," the Ninth Circuit declared, "the equitable doctrine of discovery is read into every federal statute of limitations." *Id.*, at 1067 (internal quotation marks omitted). Finding no such express directive, the Court of Appeals held that "none of [Andrews'] injuries were stale when suit was brought." *Id.*, at 1066. Accordingly, the court reinstated Andrews' improper disclosure claims and remanded them for trial.

In holding that § 1681p incorporates a general discovery rule, the Ninth Circuit parted company with four other Circuits; those courts have concluded that a discovery exception other than the one Congress expressed may not be read into the Act. See *Clark* v. *State Farm Fire & Casualty Ins. Co.*, 54 F. 3d 669 (CA10 1995); *Rylewicz* v. *Beaton Servs., Ltd.*, 888 F. 2d 1175 (CA7 1989); *Houghton* v. *Insurance Crime Prevention Institute*, 795 F. 2d 322 (CA3 1986); *Clay* v. *Equifax, Inc.*, 762 F. 2d 952 (CA11 1985). We granted certiorari to resolve this conflict, 532 U. S. 902 (2001), and now reverse.

---

[4] The District Court also granted summary judgment to TRW on the two remaining improper disclosure claims, reasoning that TRW maintained adequate procedures and that the disputed disclosures had been made for a permissible purpose as defined by § 1681b. See *Andrews* v. *Trans Union Corp.*, 7 F. Supp. 2d, at 1068–1071. The Ninth Circuit reversed that ruling. 225 F. 3d 1063, 1067–1068 (2000). Such questions, the Appeals Court held, "needed determination by a jury not a judge." *Id.*, at 1068.

## II

The Court of Appeals rested its decision on the premise that all federal statutes of limitations, regardless of context, incorporate a general discovery rule "unless Congress has expressly legislated otherwise." 225 F. 3d, at 1067. To the extent such a presumption exists, a matter this case does not oblige us to decide, the Ninth Circuit conspicuously overstated its scope and force.

The Appeals Court principally relied on our decision in *Holmberg* v. *Armbrecht,* 327 U. S. 392 (1946). See 225 F. 3d, at 1067. In that case, we instructed with particularity that "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered." *Holmberg,* 327 U. S., at 397 (internal quotation marks omitted). *Holmberg* thus stands for the proposition that equity tolls the statute of limitations in cases of fraud or concealment; it does not establish a general presumption applicable across all contexts. The only other cases in which we have recognized a prevailing discovery rule, moreover, were decided in two contexts, latent disease and medical malpractice, "where the cry for [such a] rule is loudest," *Rotella* v. *Wood,* 528 U. S. 549, 555 (2000). See *United States* v. *Kubrick,* 444 U. S. 111 (1979); *Urie* v. *Thompson,* 337 U. S. 163 (1949).

We have also observed that lower federal courts "generally apply a discovery accrual rule when a statute is silent on the issue." *Rotella,* 528 U. S., at 555; see also *Klehr* v. *A. O. Smith Corp.,* 521 U. S. 179, 191 (1997) (citing *Connors* v. *Hallmark & Son Coal Co.,* 935 F. 2d 336, 342 (CADC 1991), for the proposition that "federal courts generally apply [a] discovery accrual rule when [the] statute does not call for a different rule"). But we have not adopted that position as our own. And, beyond doubt, we have never endorsed the Ninth Circuit's view that Congress can convey its refusal to adopt a discovery rule only by explicit command, rather than

28

by implication from the structure or text of the particular statute.

The Ninth Circuit thus erred in holding that a generally applied discovery rule controls this case. The FCRA does not govern an area of the law that cries out for application of a discovery rule, nor is the statute "silent on the issue" of when the statute of limitations begins to run. Section 1681p addresses that precise question; the provision reads:

> "An action to enforce any liability created under [the Act] may be brought . . . within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under [the Act] to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under [the Act], the action may be brought at any time within two years after discovery by the individual of the misrepresentation." .

We conclude that the text and structure of § 1681p evince Congress' intent to preclude judicial implication of a discovery rule.

"Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus* v. *Glover Constr. Co.*, 446 U. S. 608, 616–617 (1980). Congress provided in the FCRA that the two-year statute of limitations runs from "the date on which the liability arises," subject to a single exception for cases involving a defendant's willful misrepresentation of material information. § 1681p. The most natural reading of § 1681p is that Congress implicitly excluded a general discovery rule by explicitly including a more limited one. See *Leatherman* v. *Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U. S. 163, 168 (1993) *("Expressio unius est exclusio alterius.")*. We would distort § 1681p's text by converting

the exception into the rule. Cf. *United States* v. *Brockamp*, 519 U. S. 347, 352 (1997) ("explicit listing of exceptions" to running of limitations period considered indicative of Congress' intent to preclude "courts [from] read[ing] other unmentioned, open-ended, 'equitable' exceptions into the statute").

At least equally telling, incorporating a general discovery rule into § 1681p would not merely supplement the explicit exception contrary to Congress' apparent intent; it would in practical effect render that exception entirely superfluous in all but the most unusual circumstances. A consumer will generally not discover the tortious conduct alleged here— the improper disclosure of her credit history to a potential user—until she requests her file from a credit reporting agency. If the agency responds by concealing the offending disclosure, both a generally applicable discovery rule and the misrepresentation exception would operate to toll the statute of limitations until the concealment is revealed. Once triggered, the statute of limitations would run under either for two years from the discovery date. In this paradigmatic setting, then, the misrepresentation exception would have no work to do.

Both Andrews and the Government, appearing as *amicus* in her support, attempt to generate some role for the express exception independent of that filled by a general discovery rule. They conceive of the exception as a codification of the judge-made doctrine of equitable estoppel, which, they argue, operates only *after* the discovery rule has triggered the limitations period, preventing a defendant from benefiting from its misrepresentation by tolling that period until the concealment is uncovered.

To illustrate this supposed separate application, Andrews and the Government frame the following scenario: A credit reporting agency injures a consumer by disclosing her file for an improper purpose. The consumer has no reason to suspect the violation until a year later, when she applies for

and is denied credit as a result of the agency's wrongdoing. At that point, the Government asserts, "the consumer would presumably be put on inquiry notice of the violation, and the discovery rule would start the running of the normal limitation period." Brief for United States et al. as *Amici Curiae* 22 (emphasis deleted); see Tr. of Oral Arg. 35–36 (argument in accord by Andrews' counsel). Some days or months later, the consumer follows up on her suspicions by requesting a copy of her credit report, to which the agency responds by concealing the initial improper disclosure. According to Andrews and the Government, the misrepresentation exception would then operate to toll the already-commenced limitations period until the agency reveals its wrongdoing.

We reject this argument for several reasons. As an initial matter, we are not persuaded by this effort to distinguish the practical function of a discovery rule and the express exception, because we doubt that the supporting scenario is likely to occur outside the realm of theory. The fatal weakness in the narrative is its assumption that a consumer would be charged with constructive notice of an improper disclosure upon denial of a credit application. If the consumer habitually paid her bills on time, the denial might well lead her to suspect a prior credit agency error. But the credit denial would place her on "inquiry notice," and the discovery rule would trigger the limitations period at that point, only if a reasonable person in her position would have learned of the injury in the exercise of due diligence. See *Stone* v. *Williams*, 970 F. 2d 1043, 1049 (CA2 1992) ("The duty of inquiry having arisen, plaintiff is charged with whatever knowledge an inquiry would have revealed."); 2 C. Corman, Limitation of Actions § 11.1.6, p. 164 (1991) ("It is obviously unreasonable to charge the plaintiff with failure to search for the missing element of the cause of action if such element would not have been revealed by such search.").

In the usual circumstance, the plaintiff will gain knowledge of her injury from the credit reporting agency. The

scenario put forth by Andrews and the Government, however, requires the assumption that, even if the consumer exercised reasonable diligence by requesting her credit report without delay, she would not in fact learn of the disclosure because the credit reporting agency would conceal it. The uncovering of that concealment would remain the triggering event for both the discovery rule and the express exception. In this scenario, as in the paradigmatic one, the misrepresentation exception would be superfluous.

In any event, both Andrews and the Government concede that the independent function one could attribute to the express exception would arise only in "rare and egregious case[s]." Brief for Respondent 32–33; see Brief for United States et al. as *Amici Curiae* 24 (implied discovery rule would apply in "vast majority" of cases). The result is that a rule nowhere contained in the text of § 1681p would do the bulk of that provision's work, while a proviso accounting for more than half of that text would lie dormant in all but the most unlikely situations.

It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan* v. *Walker*, 533 U. S. 167, 174 (2001) (internal quotation marks omitted); see *United States* v. *Menasche*, 348 U. S. 528, 538–539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting *Montclair* v. *Ramsdell*, 107 U. S. 147, 152 (1883))). "[W]ere we to adopt [Andrews'] construction of the statute," the express exception would be rendered "insignificant, if not wholly superfluous." *Duncan*, 533 U. S., at 174. We are "reluctant to treat statutory terms as surplusage in any setting," *ibid.* (internal alteration and quotation marks omitted), and we decline to do so here.[5]

---

[5] Similarly, even if we agreed that the discovery and equitable estoppel doctrines could comfortably coexist in this setting, we would reject the contention that we are therefore free to incorporate both into the

32

Andrews advances two additional arguments in defense of the decision below, neither of which we find convincing. She contends, first, that the words "date on which the liability arises"—the phrase Congress used to frame the general rule in § 1681p—"literally expres[s]" a discovery rule because liability does not "arise" until it "present[s] itself" or comes to the attention of the potential plaintiff. Brief for Respondent 13. The dictionary definition of the word "arise" does not compel such a reading; to the contrary, it can be used to support either party's position. See Webster's Third New International Dictionary 117 (1966) (arise defined as "to come into being"; "to come about"; or "to become apparent in such a way as to demand attention"); Black's Law Dictionary 138 (rev. 4th ed. 1968) ("to come into being or notice"). And TRW offers a strong argument that we have in fact construed that word to imply the result Andrews seeks to avoid. See Brief for Petitioner 16–20 (citing, *inter alia, McMahon* v. *United States,* 342 U. S. 25 (1951) (statute of limitations triggered on date "cause of action arises" incorporates injury-occurrence rule)). On balance, we conclude, the phrase "liability arises" is not particularly instructive, much less dispositive of this case.

Similarly unhelpful, in our view, is Andrews' reliance on the legislative history of § 1681p. She observes that early versions of that provision, introduced in both the House and Senate, keyed the start of the limitations period to "the date of the occurrence of the violation." S. 823, 91st Cong., 1st Sess., § 618 (1969); H. R. 16340, 91st Cong., 2d Sess., § 27 (1970); H. R. 14765, 91st Cong., 1st Sess., § 617 (1969). From the disappearance of that language in the final version of § 1681p, Andrews infers a congressional intent to reject the rule that the deleted words would have plainly established.

---

FCRA. As we have explained, see *supra,* at 28–29, we read Congress' codification of one judge-made doctrine not as a license to imply others, but rather as an intentional rejection of those it did not codify.

As TRW notes, however, Congress also heard testimony urging it to enact a statute of limitations that runs from "the date on which the violation is discovered" but declined to do so. Hearings before the Subcommittee on Consumer Affairs of the House Committee on Banking and Currency, 91st Cong., 2d Sess., 188 (1970). In addition, the very change to § 1681p's language on which Andrews relies could be read to refute her position. The misrepresentation exception was added at the same time Congress changed the language "date of the occurrence of the violation" to "liability arises." Compare S. 823, 91st Cong., 1st Sess., § 618 (1969); H. R. 16340, 91st Cong., 2d Sess., § 27 (1970); H. R. 14765, 91st Cong., 1st Sess., § 617 (1969), with H. R. Rep. No. 91–1587, p. 22 (1970). We doubt that Congress, when it inserted a carefully worded exception to the main rule, intended simultaneously to create a general discovery rule that would render that exception superfluous. In sum, the evidence of the early incarnations of § 1681p, like the "liability arises" language on which Congress ultimately settled, fails to convince us that Congress intended *sub silentio* to adopt a general discovery rule in addition to the limited one it expressly provided.

### III

In this Court, Andrews for the first time presents an alternative argument based on the "liability arises" language of § 1681p. Brief for Respondent 22–25. She contends that even if § 1681p does not incorporate a discovery rule, "liability" under the FCRA does not necessarily "arise" when a violation of the Act occurs. Noting that the FCRA's substantive provisions tie "liability" to the presence of "actual damages," §§ 1681n, 1681o, and that "arise" means at least "to come into existence," Andrews concludes that "liability arises" only when actual damages materialize. Not until then, she maintains, will all the essential elements of a claim coalesce: "duty, breach, causation, and *injury*." Brief for Respondent 23; see *Hyde* v. *Hibernia Nat. Bank*, 861 F. 2d

446, 449 (CA5 1988) ("The requirement that a consumer sustain some injury in order to establish a cause of action suggests that the statute should be triggered when the agency issues an erroneous report to an institution with which the consumer is dealing.").

Accordingly, Andrews asserts, her claims are timely: The disputed "liability" for actual damages did not "arise" until May 1995, when she suffered the emotional distress, missed opportunities, and inconvenience cataloged in her complaint; prior to that time, "she had no FCRA claim to bring," Brief for Respondent 24 (emphasis deleted). Cf. *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U. S. 192, 200–201 (1997) (rejecting construction of statute under which limitations period would begin running before cause of action existed in favor of "standard rule" that the period does not commence earlier than the date "the plaintiff can file suit and obtain relief").[6]

We do not reach this issue because it was not raised or briefed below. See Reply Brief for Petitioner 18–19. We note, however, that the Ninth Circuit has not embraced Andrews' alternative argument, see 225 F. 3d, at 1066 ("Liabil-

---

[6] The opinion concurring in the judgment rips *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U. S. 192, 201 (1997), from its berth, see *post*, at 36, 38; we here set the record straight. The question presented in *Bay Area Laundry* was whether a statute of limitations could commence to run on one day while the right to sue ripened on a later day. We answered that question, and only that question, "no," unless the statute indicates otherwise. See 522 U. S., at 200–201. Continuing on beyond the place where the concurrence in the judgment leaves off, we clarified:

"Unless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief. See *Reiter* v. *Cooper*, 507 U. S. 258, 267 (1993) ("While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute.")." *Id.*, at 201.

ity under the [Act] arises when a consumer reporting agency fails to comply with § 1681e."), and the Government does not join her in advancing it here.

Further, we doubt that the argument, even if valid, would aid Andrews in this case. Her claims alleged *willful* violations of § 1681e(a) and are thus governed by § 1681n. At the time of the events in question, that provision stated: "Any consumer reporting agency . . . which willfully fails to comply with any requirement imposed under [the Act] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages" and "such amount of punitive damages as the court may allow." 15 U. S. C. § 1681n (1994 ed.). Punitive damages, which Andrews sought in this case, could presumably be awarded at the moment of TRW's alleged wrongdoing, even if "actual damages" did not accrue at that time. On Andrews' theory, then, at least some of the liability she sought to enforce arose when the violations occurred, and the limitations period therefore began to run at that point.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in the judgment.

As the Court notes, *ante*, at 26, 27, the Court of Appeals based its decision on what it called the "general federal rule . . . that a federal statute of limitations begins to run when a party knows or has reason to know that she was injured," 225 F. 3d 1063, 1066 (CA9 2000). The Court declines to say whether that expression of the governing general rule is correct. See *ante*, at 27 ("To the extent such a

presumption exists, a matter this case does not oblige us to decide . . ."). There is in my view little doubt that it is not, and our reluctance to say so today is inexplicable, given that we held, a mere four years ago, that a statute of limitations which says the period runs from "the date on which the cause of action arose," 29 U. S. C. § 1451(f)(1) (1994 ed.), "incorporates *the standard rule* that the limitations period commences when the plaintiff has a complete and present cause of action," *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U. S. 192, 201 (1997) (emphasis added and internal quotation marks omitted).[1]

---

[1] This analysis does not, as the Court asserts, *ante,* at 34, n. 6, "ri[p] *Bay Area Laundry* . . . from its berth." The question presented on which certiorari was granted in the case was not, as the Court now recharacterizes it, the generalized inquiry "whether a statute of limitations could commence to run on one day while the right to sue ripened on a later day," *ibid.,* but rather (as set forth in somewhat abbreviated form in petitioner Bay Area Laundry's merits brief) the much more precise question, "When does the statute of limitations begin to run on an action under the Multiemployer Pension Plan Amendments Act, 29 U. S. C. § 1381 *et seq.,* to collect overdue employer withdrawal liability payments?" Brief for Petitioner, O. T. 1997, No. 96–370, p. i. (Framing of the question in respondent Ferbar Corporation's merits brief was virtually identical.) The Court's *Bay Area Laundry* opinion introduced its discussion of the merits as follows:

"[T]he Ninth Circuit's decision conflicts with an earlier decision of the District of Columbia Circuit [which] held that the statute of limitations . . . runs from the date the employer misses a scheduled payment, not from the date of complete withdrawal. . . . The Third and Seventh Circuits have also held that the statute of limitations runs from the failure to make a payment . . . . We granted certiorari . . . to resolve these conflicts." 522 U. S., at 200.

The Court's assertion that we did not answer the question presented, and did not resolve the conflicts—held only that the Ninth Circuit was wrong to say that the limitations period commenced before there was a right of action, and not that the other Circuits were right to say that the period commenced upon the failure to make a payment—is as erroneous as it is implausible. *Bay Area Laundry* held that the cause of action arose when "the employer violated an obligation owed the plan," *id.,* at

*Bay Area Laundry* quoted approvingly our statement in *Clark* v. *Iowa City,* 20 Wall. 583, 589 (1875), that "[a]ll statutes of limitation begin to run when the right of action is complete . . . ." This is unquestionably the traditional rule: Absent other indication, a statute of limitations begins to run at the time the plaintiff "has the right to apply to the court for relief . . . ." 1 H. Wood, Limitation of Actions § 122a, p. 684 (4th ed. 1916). "That a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not postpone the period of limitation." 2 *id.,* § 276c(1), at 1411.

The injury-discovery rule applied by the Court of Appeals is bad wine of recent vintage. Other than our recognition of the historical exception for suits based on fraud, *e. g., Bailey* v. *Glover,* 21 Wall. 342, 347–350 (1875), we have deviated from the traditional rule and imputed an injury-discovery rule to Congress on only one occasion. *Urie* v. *Thompson,* 337 U. S. 163, 169–171 (1949).[2] We did so there because we could not imagine that legislation as "humane" as the Federal Employers' Liability Act would bar recovery for latent medical injuries. *Id.,* at 170. We repeated this sentiment in *Rotella* v. *Wood,* 528 U. S. 549, 555 (2000), saying that the "cry for a discovery rule is loudest" in the context of medical-malpractice suits; and we repeat it again today with the assertion that the present case does *not* involve "an area

---

202, *because* "the standard rule" is that the period begins to run when the plaintiff has a "complete and present cause of action," *id.,* at 201 (internal quotation marks omitted).

[2] As the Court accurately notes, *ante,* at 27, in one other case we simply observed (without endorsement) that several Courts of Appeals had substituted injury-discovery for the traditional rule in medical-malpractice actions under the Federal Tort Claims Act, see *United States* v. *Kubrick,* 444 U. S. 111, 120, and n. 7 (1979), and in two other cases observed (without endorsement) that lower federal courts "generally apply" an injury-discovery rule, see *Rotella* v. *Wood,* 528 U. S. 549, 555 (2000); *Klehr* v. *A. O. Smith Corp.,* 521 U. S. 179, 191 (1997).

of the law that cries out for application of a discovery rule," *ante*, at 28. These cries, however, are properly directed not to us, but to Congress, whose job it is to decide how "humane" legislation should be—or (to put the point less tendentiously) to strike the balance between remediation of all injuries and a policy of repose. See *Amy* v. *Watertown (No. 2)*, 130 U. S. 320, 323–324 (1889) ("[T]he cases in which [the statute of limitations may be suspended by causes not mentioned in the statute itself] are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it").

Congress has been operating against the background rule recognized in *Bay Area Laundry* for a very long time. When it has wanted us to apply a different rule, such as the injury-discovery rule, it has said so. See, *e. g.*, 18 U. S. C. § 1030(g) (1994 ed., Supp. V).[3] See also, *e. g.*, 15 U. S. C. § 77m (1994 ed., Supp. V);[4] 42 U. S. C. § 9612(d)(2) (1994 ed.).[5] To apply a new background rule to previously enacted legislation would reverse prior congressional judgments; and to display uncertainty regarding the current background rule makes all unspecifying new legislation a roll of the dice. Today's opinion, in clarifying the meaning of 15 U. S. C. § 1681p, casts the meaning of innumerable other limitation periods in doubt.

---

[3] "No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage."

[4] "No action shall be maintained to enforce any liability created under section 77k or 77*l*(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(a)(1) of this title, unless brought within one year after the violation upon which it is based."

[5] "No claim may be presented under this section . . . unless the claim is presented within 3 years after . . . [t]he date of the discovery of the loss and its connection with the release in question."

Because there is nothing in this statute to contradict the rule that a statute of limitations begins to run when the cause of action is complete, I concur in the judgment of the Court.