Chief Justice Roberts,
with whom Justice Ginsburg, Justice Breyer, and Justice Alito join, dissenting.
Today the Court concludes that the Federal Government must pay the full amount of contract support costs incurred by the respondent Tribes, regardless of whether there are any appropriated funds left for that purpose. This despite the facts that payment'of such costs is “subject to the availability of appropriations,” a condition expressly set forth *202 in both the statute and the contracts providing for such payment, 25 U. S. C. §§450j-1(b), 450Z(c) (model agreement § 1(b)(4)); that payment of the costs for all tribes is “not to exceed” a set amount, e.g., 108 Stat. 2511, an amount that would be exceeded here; and that the Secretary “is not required to reduce funding for programs, projects, or activities serving a tribe to make funds available to another tribe,” §450j-l(b). Because the Court’s conclusion cannot be squared with these unambiguous restrictions on the payment of contract support costs, I respectfully dissent.
The Indian Self-Determination and Education Assistance Act provides: “Notwithstanding any other provision in [the Act], the provision of funds under this [Act] is subject to the availability of appropriations . . . .” Ibid. This condition is repeated in the Tribes’ contracts with the Government. App. 206; see also § 450l(c) (model agreement § 1(b)(4)). The question in this case is whether appropriations were “available” during fiscal years 1994 through 2001 to pay all the contract support costs incurred by the Tribes. Only if appropriations were “available” may the Tribes hold the Government liable for the unpaid amounts.
Congress restricted the amount of funds “available” to pay the Tribes’ contract support costs in two ways. First, in each annual appropriations statute for the Department of the Interior from fiscal years 1994 to 2001, Congress provided that spending on contract support costs for all tribes was “not to exceed” a certain amount. The fiscal year 1995 appropriations statute is representative. It provided: “For operation of Indian programs . . . , $1,526,778,000, ... of which not to exceed $95,823,000 shall be for payments to tribes and tribal organizations for contract support costs . . . .” 108 Stat. 2510-2511. As the Court acknowledges, ante, at 194-195, the phrase “not to exceed” has a settled meaning in federal appropriations law. By use of the phrase, Congress imposed a cap on the total funds available for contract support costs in each fiscal year. See 2 General Accounting Office, *203 Principles of Federal Appropriations Law, p. 6-8 (2d ed. 1992) (“[T]he most effective way to establish a maximum ... earmark is by the words ‘not to exceed’ or ‘not more than’ ”).
Second, in §450j-l(b) itself—in the very same sentence that conditions funding on the “availability of appropriations”—Congress provided that “the Secretary [of the Interior] is not required to reduce funding for programs, projects, or activities serving a tribe to make funds available to another tribe or tribal organization under [the Act].” An agency may be required to shift funds from one object to another, within statutory limits, when doing so is necessary to meet a contractual obligation. See 1 id., at 2-26 (2d ed. 1991). But the “reduction” clause in §450j-1(b) expressly provides that the Secretary is “not required” to engage in such reprogramming to make one tribe’s funds “available to another tribe.” It follows that appropriations allocated for “programs, projects, or activities serving a tribe” are not “available” to another tribe, unless the Secretary reallocates them. Contrary to the Court’s suggestion, ante, at 197, the Government shares this view that the “reduction” clause “specifically relieves the Secretary of any obligation to make funds available to one contractor by reducing payments to others,” Brief for Petitioners 51 (citing Arctic Slope Native Assn., Ltd. v. Sebelius, 629 F. 3d 1296, 1304 (CA Fed. 2010), cert. pending, No. 11-83 (filed July 18, 2011)).
Given these express restrictions established by Congress—which no one doubts are valid—I cannot agree with the Court’s conclusion that appropriations were “available” to pay the Tribes’ contract support costs in full. Once the Secretary had allocated all the funds appropriated for contract support costs, no other funds could be used for that purpose without violating the “not to exceed” restrictions in the relevant appropriations statutes. The Court agrees. Ante, at 194-195. That leaves only one other possible source of funds to pay the disputed costs in this case: funds appropriated for contract support costs, but allocated to pay *204 such costs incurred by other tribes. Those funds were not “available” either, however, because they were “funding for programs, projects, or activities serving a tribe,” and the Secretary was not required to reduce such funding “to make funds available to another tribe.” §450j-1(b).
In reaching a contrary conclusion, the Court fails to appreciate the full significance of the “reduction” clause in § 450j-1(b). As construed by the Court, that clause merely confirms that the Secretary “may allocate funds to one tribe at the expense of another.” Ante, at 193. But as explained above, the clause does more than that: It also establishes that when the Secretary does allocate funds to one tribe at the expense of another, the latter tribe has no right to those funds—the funds are not “available” to it. The fact that the Secretary could have allocated the funds to the other tribe is irrelevant. What matters is what the Secretary actually does, and once he allocates the funds to one tribe, they are not “available” to another.
The Court rejects this reading of the “reduction” clause, on the ground that it would constitute a “radical departure from ordinary Government contracting principles.” Ante, at 196, n. 6. But the fact that the clause operates as a constraint on the “availability of appropriations” is evident not only from its text, which speaks in terms of “funds available,” but also from its placement in the statute, immediately following the “subject to the availability” clause. Under the Court’s view, by contrast, the “reduction” clause merely “underscores the Secretary’s discretion to allocate funds among tribes.” Ante, at 196. There is, however, no reason to suppose that Congress enacted the provision simply to confirm this “ordinary” rule. Ibid. We generally try to avoid reading statutes to be so “insignificant.” TRW Inc. v. Andrews, 534 U. S. 19, 31 (2001) (internal quotation marks omitted).
The Court maintains that its holding is compelled by our decision in Cherokee Nation of Okla. v. Leavitt, 543 U. S. 631 *205 (2005). Ante, at 192. Like respondents here, the Tribes in Cherokee Nation sued the Government for unpaid contract support costs under the Act. Congress had appropriated certain sums to the Indian Health Service “[f]or expenses necessary to carry out” the Act, e. g., 108 Stat. 2527-2528, but—unlike in this case—those appropriations “contained no relevant statutory restriction,” 543 U. S., at 637. The Government in Cherokee Nation contended that it was not obligated to pay the contract support costs as promised, in light of the “reduction” clause in § 450j—1(b). The Government argued that the clause “makes nonbinding a promise to pay one tribe’s costs where doing so would require funds that the Government would otherwise devote to ‘programs, projects, or activities serving ... another tribe.’ ” Id., at 641 (quoting § 450j-1(b)).
We ruled against the Government, but not because of any disagreement with its reading of the “reduction” clause. The basis for our decision was instead that “the relevant congressional appropriations contained other unrestricted funds, small in amount but sufficient to pay the claims at issue.” 543 U. S., at 641 (emphasis altered). Those funds were allocated for “ ‘inherent federal functions,’ such as the cost of running the Indian Health Service’s central Washington office.” Id., at 641-642. They were not restricted by the “reduction” clause, because they were not funds for “‘programs, projects, or activities serving . . . another tribe. ’ ” Id., at 641 (quoting § 450j—1(b)). Nor were they restricted by the pertinent appropriations statutes, which, as noted, contained no relevant limiting language. See id., at 641. We therefore held that those funds—which we described as “unrestricted” throughout our opinion, id., at 641, 642, 643, 647—were available to pay the disputed contract support costs.
As even the Tribes concede, Cherokee Nation does not control this case. Tr. of Oral Arg. 39 (counsel for the Tribes) *206 (“I don’t think this case is controlled by Cherokee”). The reason is not that the appropriations statutes in this case contained “not to exceed” caps while those in Cherokee Nation did not. The Court is correct that appropriating an amount “for” a particular purpose has the same effect as providing that appropriations for that purpose are “not to exceed” that amount. Ante, at 195. What makes this ease different is where Congress drew the line. In Cherokee Nation, the statutes capped funding for “expenses necessary to carry out” the Act, a category that included funding for both “inherent federal functions” and contract support costs. Accordingly, funding for one could be used for the other, without violating the cap. Here, by contrast, the statutes capped funding for contract support costs specifically. Thus, once the Secretary exhausted those funds, he could not reprogram other funds—such as funds for “inherent federal functions”—to pay the costs. With the caps in place, moreover, the “reduction” clause, as explained above, rendered unavailable the only possible source of funds left: funds already allocated for other contract support costs. Unlike in Cherokee Nation, therefore, there were no unrestricted funds to pay the costs at issue in this case. The Court’s quotation from Cherokee Nation concerning “when an ‘ “unrestricted appropriation is sufficient to fund the contract,” ’ ” ante, at 196 (quoting Cherokee Nation, supra, at 641; emphasis added), is accordingly beside the point.
The Court also relies on Ferris v. United States, 27 Ct. Cl. 542 (1892). That case involved a Government contract to dredge the Delaware River. When work under the contract stopped because funds from the relevant appropriation had been exhausted, a contractor sued the Government for breach of contract, and the Court of Claims held that he was entitled to recover lost profits. As the court explained, “[a] contractor who is one of several persons to be paid out of an appropriation is not chargeable with knowledge of its *207 administration, nor can his legal rights be affected or impaired by its maladministration or by its diversion, whether legal or illegal, to other objects.” Id., at 546. That principle, however, cannot “dictate the result in this case.” Ante, at 192. The statute in Ferris appropriated an amount “[f]or improving [the] Delaware River,” which prevented spending for that purpose beyond the specified amount. 20 Stat. 364. But in that case, all funds appropriated for that purpose were equally available to all contractors. Here that is not true; §450j-1(b) makes clear that funds allocated to one contractor are not available to another. Thus, the principle in Ferris does not apply.
It is true, as the Court notes, ante, at 194, that each of the Tribes’ contracts provides that the Act and the contract “shall be liberally construed for the benefit of the Contractor.” App. 203; see also § 450l(c) (model agreement § 1(a)(2)). But a provision can be construed “liberally” as opposed to “strictly” only when there is some ambiguity to construe. And here there is none. Congress spoke clearly when it said that the provision of funds was “subject to the availability of appropriations,” that spending on contract support costs was “not to exceed” a specific amount, and that the Secretary was “not required” to make funds allocated for one tribe’s costs “available” to another. The unambiguous meaning of these provisions is that when the Secretary has allocated the maximum amount of funds appropriated each fiscal year for contract support costs, there are no other appropriations “available” to pay any remaining costs.
This is hardly a typical government contracts case. Many government contracts contain a “subject to the availability of appropriations” clause, and many appropriations statutes contain “not to exceed” language. But this case involves not only those provisions but a third, relieving the Secretary of any obligation to make funds “available” to one contractor by reducing payments to others. Such provisions will not *208 always appear together, but when they do, we must give them effect. Doing so here, I would hold that the Tribes are not entitled to payment of their contract support costs in full, and I would reverse the contrary judgment of the Court of Appeals for the Tenth Circuit.