LOKEN, Circuit Judge,
dissenting.
I respectfully dissent. In my view, there are two distinct reasons why the decision of the Administrative Review Board should not be affirmed.
A. First, the Board committed errors of law in ruling that Canter’s retaliation claim is not time-barred by the STAA’s express 180-day statute of limitations:
An employee alleging discharge, discipline, or discrimination in violation of subsection (a) of this section ... may file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred.
49 U.S.C. § 31105(b). An agency may not ignore an express statute of limitations. It reflects a legislative “value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale claims.” Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), quoted in Ashley v. Boyle’s Famous Corned Beef Co., 66 F.3d 164, 169 (8th Cir.1995) (en banc).
Canter’s complaint was filed more than five years after Maverick’s alleged post-employment retaliatory action.[6] Instead of dismissing the claim as time-barred, the Board supposedly applied the “discovery rule of federal common law,” op. at 1153, which the court approves as consistent with Eighth Circuit precedent absent “a contrary directive from Congress,” id. at 1154. But the Supreme Court expressly refused to approve that precedent in TRW, Inc. v. Andrews; instead, the Court concluded that the “structure and text” of the federal statute at issue in that case “evince Congress’s intent to preclude judicial implication of a discovery rule.” 534 U.S. 19, 27-28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). In the federal labor laws, Congress has consistently adopted short statutes of limitations in the interests of promptly resolving employment disputes and promoting labor peace. For example, § 160(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), provides that “no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge.” In reversing a decision of the National Labor Relations Board that failed to enforce this limitation, the Court ended with a pointed reminder that governs decisions *1159 of the Secretary of Labor’s Administrative Review Board as well:
As expositor of the national interest, Congress, in the judgment that a six-month limitations period did “not seem unreasonable,” barred the [NLRB] from dealing with past conduct after that period had run, even at the expense of the vindication of statutory rights.
Local Lodge No. U&k, Int’l Ass’n of Machinists v. NLRB, 362 U.S. 411, 429, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). The Board ignored that governing principle in adopting the discovery rule here. Under Chevron, its contrary decision should not be affirmed.
Moreover, the court brushes aside a second legal error by euphemistically stating that the Board adopted a “version” of the discovery rule of federal common law, namely, that Canter had 180 days after receiving “final, definitive, and unequivocal notice of an adverse employment action.” That is not a “version” of the common law rule. The Board’s rule is flatly contrary to the common law rule, which, as the Supreme Court has expressly noted, includes an “inquiry notice” principle that “trigger[s] the limitations period” when “a reasonable person in her position would have learned of the injury in the exercise of due diligence.” TRW, 534 U.S. at 30, 122 S.Ct. 441; see Comcast of III. X v. Multi-Vision Elec. Inc., 491 F.3d 938, 944 (8th Cir.2007) (“Under this rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the. basis of the litigation.”) (emphasis added). The Board’s adoption of a rule contrary to the universally accepted discovery rule was nothing less than unlawfully legislating an express statute of limitations out of the statute. And this error was far from harmless. Maverick presented evidence that Canter was not hired by one trucking company in 2007 under circumstances that would have caused a diligent, experienced truck driver to obtain his DAC, as Canter finally did in 2008. By adopting a legally unjustifiable “version” of the discovery rule, the ALJ and the Board were able to improperly avoid resolving this issue.
B. Second, the Board, the court, and the parties agree that the ALJ erred in failing to apply a 2007 amendment to the STAA: “All complaints initiated under this section shall be governed by the legal burdens of proof set forth in [49 U.S.C.] section 42121(b).” 49 U.S.C.A. § 31105(b)(1) (2013 Pocket Part). The Board concluded the error was harmless, a conclusion Maverick squarely challenged on appeal. The court ignores the issue. I conclude the Board committed legal error.
As Maverick argued, the ALJ sustained Canter’s claim because (i) his alleged refusal to drive the truck for safety reasons was STAA protected activity; (ii) Maverick knew of the protected activity, creating an inference of discrimination; and (iii) Canter established that Maverick’s purported reason for the adverse DAC notation was pretextual. But in the 2007 amendment, Congress expressly provided that “the Secretary of Labor shall dismiss a complaint ... unless the complainant makes a prima facie showing that [the protected activity] was a contributing factor in the unfavorable personnel action alleged in the complaint,” 49 U.S.C. § 42121(b)(2)(B). Here, the ALJ did not require Canter to prove the “contributing factor” element of his claim, nor did the ALJ make that finding. The court brushes this aside by inventing a finding the ALJ never made — that “Canter’s refusal motivated Maverick to place the abandonment notation in Canter’s DAC report,” op. at 1156. All the ALJ in fact found was that Maverick’s proffered explanation — which the ALJ misstated — was pretextual. By this faulty analysis, the *1160 ALJ and the Board were able to avoid the critical issue presented by the evidence in this case.
Following the tragic accident on November 21, 2003, the Pennsylvania State Police inspected Canter’s truck and concluded it had defects that violated federal safety regulations but had not contributed to the accident — two brake adjustment defects that rendered the truck “out of service” (not operable) and a slight power steering fluid leak and brake hose chafing that required repair to be brought into compliance but were not “out of service” defects. Following adjustment of the brakes near the scene of the accident, and with the approval of the State Police and Maverick, Canter drove the truck 70-80 miles to a truck stop near his home where the loaded trailer was left to be picked up by another driver, then nine more miles to Canter’s home, where it sat for five weeks while Canter took a medical leave of absence on account of depression from the fatal accident.
On December 30, having been released to return to work, Canter told his Fleet Manager that he was quitting because Maverick did not grant him workers’ compensation benefits for his non-physical emotional injuries. The next day, instead of returning the truck to Maverick’s yard in Ohio, as the Fleet Manager had requested, Canter called and said he would only take it to the truck stop nine miles from his home because it had “too many deadline problems.” Without question, Maverick made the DAC notation because Canter quit and refused to drive his truck back to Maverick’s facilities in Ohio. But was the notation made because Canter had refused to drive the truck because it was unsafe, or because he had refused his former employer’s reasonable request that he drive a truck that had safety defects requiring repair but was not out of service, a truck he had already driven some 100 miles in the same condition, to a yard 250 miles away where it could be efficiently and properly repaired? If the latter, then the DAC notation was a truthful explanation of why Maverick would not consider rehiring Canter, not a pretext for retaliating against this former employee because he had engaged in protected activity. An agency decision that uses an erroneous legal standard to avoid addressing the key fact question in the case is, without question in my view, “arbitrary, capricious, an abuse of discretion, or otherwise contrary to law” within the meaning of 5 U.S.C. § 706(2)(A).
For either or both these reasons, I would reverse.

. Canter’s claim was truly stale. He was hired seven times by four different trucking companies after quitting Maverick in December 2003. He first experienced "difficulty” in April 2008, when the country’s "Great Recession” had greatly reduced the demand for truck drivers. Even then, he was hired by DSCO in July 2008 and quit in early September 2008. When he obtained the DAC report later in September, he objected to five different negative employer notations. Canter’s damage claim is based on K & B's subsequent failure to hire a prospective employee with a terrible work record at a time when the economy was depressed and many experienced truck drivers were also seeking work. This claim should be time-barred.